GEORGE WILBUR FROST, petitioner-respondent,

*v.*

DOROTHY CAMPBELL FROST, defendant-appellant.

[Submitted November 30th, 1915.   Decided March 6th, 1916.]

1. A husband, charging his wife with adultery, in full possession of all the proofs bearing upon the situation, continuing to occupy the same bed with her, engaging from time to time in marital intercourse, will be precluded from enforcing his remedy on the ground that he had condoned the offence.

2. To establish the charge of adultery in the absence of positive proof, the probabilities must be such as to enable a reasonable and just man in the exercise of his discretion to draw a satisfying inference of the defendant's guilt.

On appeal from a decree of the court of chancery advised by Advisory Master Charles V. D. Joline.

*Messrs. Kates & Burling,* for the respondent.

*Mr. David H. Goff,* for the appellant.

The opinion of the court was delivered by

TERHUNE, J.

The petition in this case was filed by the husband, charging his wife with adultery committed with one Sidney D. Jones,

at No. 909 Spruce street, Camden, N. J., on August 14th, 1914, and divers others days of July and August, 1914, and also with an unknown man at Clementon, N. J., on October 21st, 1914.

The advisory master held that the defendant committed adultery with one Sidney Jones at No. 909 Spruce street, in the city of Camden, on or about the 14th day of August, 1914, and that she also committed adultery with one Jesse P. Ware, at Clementon, in the county of Camden and State of New Jersey, on or about the 21st day of October, 1914, and that the petitioner had not condoned either of said offences.

The testimony is confined to the charge in the petition that the defendant committed adultery on the two specific days named. Two questions are involved:

*First.* Were either or both of the offences committed?

*Second.* If so, were either or both condoned?

We will deal with the offences charged in the order of their alleged happening, and in taking up what occurred on August 14th, it seems proper to consider the second question first, *i. e.*, whether the offence, if committed, has been condoned, for if there has been a condonation, the petitioner is precluded from enforcing his remedy, and we are relieved from passing upon the guilt or innocence of the defendant.

The parties to this suit were married in 1910. No children were born of the marriage. They seem to have lived together contentedly until August 14th, 1914. On that day petitioner, a paperhanger by trade, on returning home about four P. M., found Jones with his wife in the sitting room upstairs. The defendant introduced Jones to her husband by a false name, claiming that he was her cousin, Charles Opperman. The husband was suspicious, and after the departure of the visitor, he accused his wife of deceiving him, and at the same time threatened to pack up his effects and leave. She thereupon admitted that the visitor was not her cousin Opperman, but a man by the name of Jones, that he had been in the house for over two hours; that there had been no undue intimacy between them, and while not acknowledging guilt, promised she would be true and faithful in the future. After the above incident, with the exception of the finding by the petitioner on the first

Monday in September, 1914, of several postal cards signed by Jones, and one or two casual meetings on the public streets, Jones, so far as the testimony discloses, dropped out of the lives of the parties. On the night of August 14th, that is to say, on the very night of the day that the advisory master found that the defendant had committed adultery with Jones, the petitioner appears to have decided to forgive or overlook his wife's guilt or indiscretion, whichever it may have been, for according to his own admission, he occupied the same room and bed with her. In fact, he further admits that without interruption he continued to occupy the same house, room and bed with her up to November 12th, 1914, and that during all this period, while in full possession of all the knowledge bearing upon the situation, including the visible evidence of his own eyes, a knowledge which placed upon him full responsibility for his subsequent acts, he admits that without interruption he slept with his wife and had from time to time sexual intercourse with her up to November 6th, 1914.

The law applicable to the facts proved in this case is thus stated by *2 Bish. Mar. & D. § 36 (6th ed.)* :

"Where the husband comes into possession of the fact and proof that his wife committed adultery, then if he has marital intercourse with her, the law presumes that he condoned the offence, and refuses him divorce."

The above is the well settled law of this state; therefore, in dealing with the first offence charged in the petition we find that the husband, having admitted that he did have marital intercourse with the defendant after he came into possession of all the facts and proofs relating thereto, thereby condoned the offence, and is consequently precluded from enforcing his remedy. *Marsh* v. *Marsh, 13 N. J. Eq. 281; Rogers* v. *Rogers, 67 N. J. Eq. 534.*

This brings us to the second allegation in the petition, that the defendant committed adultery with an unknown man who subsequently turned out to be Jesse P. Ware, at Clementon, Camden county, N. J., on or about the 21st day of October, 1914.

The testimony discloses that on the 10th of October, 1914, petitioner employed a detective agency to watch his wife. On the 21st day of October one of these detectives, William Miller by name, saw the defendant leave her home about ten o'clock in the morning and take a car destined for Clementon. As soon as she boarded the car she met Ware, with whom she undoubtedly had an appointment. The couple occupied the same seat until the car reached Clementon. We gather from the testimony that at this terminus there is a park containing a grove, lake, picnic grounds, and beyond, some woods. Following the uncorroborated testimony of the detective, it appears that on alighting from the car the couple walked through the park in the direction of the woods; that upon their looking back at him, the detective discontinued his observations, returned to a restaurant for the purpose of telephoning for other members of the detective staff, and having telephoned, he again took up a position of watchful waiting in the front of the restaurant; that soon after twelve o'clock he noticed the couple coming from the park, standing for awhile talking on a small bridge, and then shortly after twelve board a car for Clementon. On reaching Broad street, at Spruce street, Camden, the defendant left the car, while Ware continued on.

The defendant, in giving her account of this occurrence, states that for some time prior thereto she knew her husband was having her watched by detectives; that she was angry and accused him of it; that he disclaimed any knowledge of the fact that she was being watched, and said if any one was watching the house or her, to call up the city hall and have them arrested; that the Bible was brought down from upstairs and her husband took an oath on it that he positively had no one watching her; that after this oath which the husband does not deny taking, the detectives continued to follow her; that upon the suggestion of her sister she determined to give her husband some real cause for complaint; that some time previous she had been introduced at the Camden ferry by a Mrs. Wise to a man named Ware; that subsequent to the introduction she had on one occasion again met him casually at the ferry and talked with

him a few minutes; that on the morning of this affair Ware called her over the telephone and asked her how she would like to take a little trolley ride out to Clementon; that considering this was a good time to find out whether men were actually watching her, she met Ware on the trolley, rode with him as far as Clementon, went with him through the picnic grounds over to the lake, where there was a table; that they sat at this table talking, watching two men fishing until it was about time to return; that all the time they were · where they could be seen by the men on the lake; that there was no underbrush, and nothing to prevent all their actions from being observed; that they never entered the woods, nor were they guilty of any wrong doing; that they remained at Clementon about an hour, taking the twelve o'clock trolley back to Camden; that they separated at Spruce street, and from that time she, defendant, has neven seen or communicated with Ware.

A careful examination of the case does not disclose any material difference between the testimony of the detective and that of the defendant and Ware. The proof shows that this couple remained in this public park or grove, other men being present, in the middle of the day, for a period of about one hour, and there the proof, so far as it affects the guilt or innocence of the defendant, ends. There is no question that the defendant's ideas of her marital obligations were of a low order; that some of her acts were wrapped in suspicion; that for the sake of what she seems to have regarded as a simple diversion she was willing to jeopardize her reputation for virtue; but these patent characteristics do not preclude her from having the probabilities of her guilt or innocence weighed in a judicial scales unswayed by heat or prejudice in the determination of her legal rights.

In this connection, the question sought to be determined is this: Conceding her conduct most censurable, in the absence of all evidence of a positive character, can we from the meagre proofs before us draw a reasonable and satisfying inference of this wife's guilt, based upon a theory, that knowing she was being constantly watched by detectives in her husband's employ,

she proceeded by trolley to a park frequented by and open to the public, and that there, in the middle of the day, knowing she was liable to either casual or prearranged observation, in the open, cohabited with a man for whom she had no affection, with whom there had been no previous familiarity, no correspondence, no compromising situations, no secret meetings, in fact, with a man she had never been out with before or since?

"To establish the existence of adultery, the circumstances must be such as would lead the guarded discretion of a reasonable and just man to that conclusion. It must not be a rash and intemperate judgment, moving upon appearances that are equally capable of two interpretations.

"The facts proven must be such as cannot be reconciled with probability and the innocence of the parties." *Berckmans v. Berckmans, 16 N. J. Eq. 143.*

We accordingly find that while it is apparent that the defendant in this case laid herself open to the gravest suspicions, the proofs do not warrant the conclusion that she actually surrendered her virtue, and this finding leads to a reversal of the decree below.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR—14.